IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JAMES THOMAS )
*on behalf of himself and those similarly situated* )
Plaintiff, )
)
)
v. ) Civil Action
) No. 3:09CV597
GC SERVICES, LP )
)
SERVE: CT Corporation System )
4701 Cox Road, Suite 301 )
Glen Allen, VA 23060 )
)
Defendant. )
)

## CLASS ACTION COMPLAINT

COMES NOW the Plaintiff, JAMES THOMAS, (hereafter, "the Plaintiff") by counsel, and as for his Complaint against Defendant GC Services, LP, he alleges as follows:

1. This is a class action for statutory and punitive damages, costs, and attorney's fees brought pursuant to 15 U.S.C § 1681 et seq. (the Fair Credit Reporting Act or "FCRA"). Individual claims are brought pursuant to 15 U.S.C § 1692 et seq. (the Fair Debt Collection Practices Act or "FDCPA").

## JURISDICTION

2. The jurisdiction of this Court is conferred by 15 U.S.C. § 1692, 15 U.S.C. § 1681, and 15 U.S.C. § 1331. Venue is proper, as the Defendant's actions were directed at the Plaintiff in the Eastern District of Virginia, and the Defendant's registered agent is located in Glen Allen, Virginia.


## PARTIES

3.  The Plaintiff is a "consumer" as defined by the FCRA and FDCPA.

4.  Upon information and belief, GC SERVICES LIMITED PARTNERSHIP ("GC Services") is a partnership with its primary headquarters in Texas and which does business in the Commonwealth of Virginia through its registered offices in Glen Allen, Virginia. It is a "user" of credit reports as defined by the Fair Credit Reporting Act. It is also a "debt collector" as defined and governed by the Fair Debt Collection Practices Act.

## FACTS

5.  In late 2008, the Defendant began the collection of a debt owed to American Express solely by Plaintiff's wife (hereafter, "the account").

6.  The Defendant acted as a debt collector in all of its contacts with the Plaintiff.

7.  Shortly after the account was assigned to the Defendant from American Express, the Defendant accessed at least one consumer report regarding Plaintiff, specifically a full traditional Experian credit report. This report included Plaintiff's payment history on various tradelines, the identity of his creditors, the identity of companies that had inquired into his credit history, the balances on his credit cards, and other private financial information.

8.  When the Defendant ordered the the Plaintiff's credit report from Experian, it was aware that the Fair Credit Reporting Act required the Defendant to have a permissible purpose for accessing the reports, and that Experian required the same.

9.  The Defendant had been sued months earlier by another consumer in the Eastern District of Virginia who had alleged that the Defendant had accessed her credit report without a permissible purpose. The Defendant did not change its policies or procedures as a result of that earlier case, and it continued to allow its employees to obtain Experian consumer reports

regarding the authorized users on the American Express accounts.

10. At the time it obtained Plaintiff's consumer report, the Defendant knew that Plaintiff was only listed, at most, as an authorized user on the account.

11. The American Express account was not Plaintiff's account, and he was not obligated to pay anything on the account.

12. American Express does not issue joint accounts.

13. In response to the electronic request sent by the Defendant asking for the Plaintiff's credit report, Experian furnished a consumer report that regarded Plaintiff on or about November 10, 2008 to the Defendant.

14. Experian relied on the Defendant's false certification that it was collecting Plaintiff Thomas's debt when it provided his credit report to the Defendant and would not have done so, but for the false certification.

15. The Defendant's internal policy was that a manager had to approve the access of the full Experian credit report. Upon information and belief, in accordance with the Defendant's established policies and procedures, a manager approved this access of Plaintiff's credit report despite that the manager was aware that Plaintiff was not an obligor on the underlying American Express account.

16. By its use of the Plaintiff's full Experian credit report, the Defendant also obtained the Plaintiff's personal identifiers, such as his social security number and date of birth from the report, as well as his addresses, telephone numbers, home ownership status, and information about his creditors and employers, thereby grossly intruding upon his personal privacy.

17. Plaintiff was never an obligor on the account.

3

18. Plaintiff never applied for the account.

19. American Express never represented to the Defendant that Plaintiff was obligated on the account.

20. American Express never provided Plaintiff's social security number to the Defendant regarding the account.

21. Despite that Plaintiff was not obligated on his wife's account, Defendant nonetheless directed its collection efforts at Plaintiff, and on multiple occasions, demanded that Plaintiff remit payment in full on his wife's debt.

22. The Defendant called the Plaintiff relentlessly. When it finally reached the Plaintiff, it demanded that he pay his wife's account in full. It never asked the Plaintiff for location information regarding his wife. During these calls, which included calls to Plaintiff's place of employment, Plaintiff informed a representative of the Defendant that he was not aware of the nature of his wife's charges, that his wife was not in a position to pay the debt, that he would not pay the debt, and that he was not permitted to receive calls at work. Plaintiff explained that not only was his wife a teacher on a low and fixed income, but that she had recently been diagnosed with cancer and was extremely ill.

23. The Defendant's representative thereafter berated and verbally abused the Plaintiff for not paying his wife's account. Plaintiff's recollection of his conversation with the Defendant's representative is supported by GC Services' account records, which callously state:

**"Supp. is trying to blame this on his sick wife."**

24. Defendant persisted in its collection efforts with regard to the Plaintiff and his wife following Plaintiff's notification to Defendant of his wife's inability to pay the debt.

## FIRST CLAIM FOR RELIEF
## FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681b(f)
## ("the FCRA Class Claim")

25. Plaintiff re-alleges and reincorporates paragraphs 1 through 24 above as if fully set out herein.

26. The Defendant willfully violated the Fair Credit Reporting Act, 15 U.S.C. § 1681b(f) by using or obtaining one or more consumer reports that regarded Plaintiff and the putative class members without a permissible purpose.

27. The Defendant willfully violated the Fair Credit Reporting Act, 15 U.S.C. §1681b(f) by failing to certify its permissible purpose for accessing the consumer reports that regarded Plaintiff and the putative class members prior to its access of their reports.

28. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this claim for himself and on behalf of a class ("the FCRA class") of similarly situated individuals initially defined as follows:

   a) All natural persons with addresses within the United States who were listed only as non-obligor "supplemental cardholders" on any account assigned by American Express to the Defendant for collection; and

   b) regarding whom the Defendant obtained a full Experian credit report noted as "code 20" in the Experian invoices within the two-year period preceding the filing date of the Complaint.

Excluded from the class definition are any employees, officers, directors of GC Services, and any legal representatives, heirs, successors, and assignees of GC Services, and any judge assigned to hear this action.

29. **Numerosity.** Fed. R. Civ. P 23(a)(1) Upon information and belief, Plaintiff alleges that the class members are so numerous that joinder of all is impractical. The names and addresses of the class members are identifiable through the internal business records maintained by GC Services, and the class members may be notified of the pendency of this action by published and/or mailed notice.

30. In any event, the size of the class as defined in paragraph 28 exceeds 100 natural persons.

31. **Predominance of Common Questions of Law and Fact.** Fed. R. Civ. P. 23(a)(2) Common questions of law and fact exist as to all members of the putative class. These questions

32. **Typicality.** Fed. R. Civ. P. 23(a)(3) Plaintiff's claims are typical of the claims of each putative class member. Plaintiff is entitled to relief under the same causes of action as the other members of the putative class.

33. **Adequacy of Representation.** Fed. R. Civ. P. 23(a)(4) Plaintiff is an adequate representative of the putative class, because his interests coincide with, and are not antagonistic to, the interests of the members of the putative class he seeks to represent; he has retained counsel competent and experienced in such litigation; and he had and intends to continue to prosecute this action vigorously. Plaintiff and his counsel will fairly and adequately protect the interests of the members of the putative class.

34. **Superiority.** Fed. R. Civ. P. 23(b)(3) Questions of Law and fact common to the putative class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages suffered by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by GC Services' conduct.

Even if the members of the class themselves could individually afford such litigation, it would be an unnecessary burden on the Courts. Furthermore, the individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by GC Services' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

35. **Injunctive Relief Appropriate for the Class.** Fed. R. Civ. P. (b)(2) Class certification is appropriate, because GC Services has acted on ground generally applicable to the class, making injunctive relief appropriate with respect to Plaintiff and the putative class members.

36. Based on the Defendant's lack of a permissible purpose for accessing the consumer reports of the class members and its failure to certify a valid permissible purpose to the credit reporting agency before obtaining their consumer reports – two separate and discrete requirements of the statute -- the Defendant is liable to Plaintiff and each of the putative class members for statutory damages of $2,000.00 per person ($1,000.00 per violation of the FCRA), as well as punitive damages in an amount to be decided by the jury, and attorney's fees and costs pursuant to 15 U.S.C. § 1681n and 1681o.

37. Plaintiff, on behalf of his fellow class members, is further entitled to declaratory and injunctive relief pursuant to Rule 23(b)(2) requiring GC Services' future compliance with these requirements of the FCRA in the future.

## SECOND CLAIM FOR RELIEF
## FAIR DEBT COLLECTION PRACTICES ACT
## § 15 U.S.C. 1692c(a)

38. The Plaintiff re-alleges and incorporates paragraphs 1 through 37 above as if fully set forth herein.

7

39. Defendant violated the Fair Debt Collection Practices Act in multiple ways, including by example only and without limitation, by its abusive and ridiculing statements made to Plaintiff during the collection calls, by its efforts to collect a debt from him that he did not owe, by its calls to his place of employment after such time as the Defendant learned that Plaintiff could not receive calls at work, by its misrepresentations made to him in the call regarding the legal status and character of the debt, and by its failures to provide the Plaintiff with the notices required by 15 U.S.C. § 1692g.

40. As a result of the Defendant's violations of the FDCPA, the Defendant is liable to the Plaintiff for actual and statutory damages, attorney's fees and costs pursuant to 15 U.S.C. § 1692k.

41. As a result of the Defendant's violation of the FDCPA, the Plaintiff suffered actual damages for emotional and mental anguish, frustration, and anxiety, as well as out of pocket losses. Such damages are recoverable pursuant to 15 U.S.C. § 1692k.

WHEREFORE, Your Plaintiff and class members demand judgment to recover statutory and punitive damages, and attorney's fee and costs from the Defendant in an amount to be determined by the Court for each of the two violations of the FCRA. The Plaintiff also demands judgment to recover actual and statutory damages, and attorney's fees and costs pursuant to the FDCPA. The Plaintiff also moves this Court for declaratory and injunctive relief, including, but not limited to, an Order forbidding the Defendant from obtaining full Experian credit reports which regard consumers who are not listed as basic cardmembers on the American Express debts that it collects.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,
JAMES THOMAS,

*/s/ Matthew J. Erausquin*
Matthew J. Erausquin, VSB#65434
Counsel for the Plaintiffs
CONSUMER LITIGATION ASSOCIATES, P.C.

1800 Diagonal Road, Suite 600
Alexandria, VA 22314
Tel: 703-273-7770
Fax: 888-892-3512
matt@clalegal.com